**Case No. 23-55190**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NARGUESS NOOHI, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED
PLAINTIFFS,

v.

JOHNSON & JOHNSON CONSUMER INC.,
DEFENDANT.

DISTRICT COURT CASE NO. 2:20-CV-03575-TJH-JEM

## APPELLEE'S SUPPLEMENTAL BRIEF

**LAW OFFICES OF TODD M. FRIEDMAN**
Todd M. Friedman, Esq. (SBN 21675)
Adrian R. Bacon, Esq (SBN 280332)
Meghan E. George, Esq. (SBN 274525)
21550 Oxnard St., Ste 780
Woodland Hills, CA 91367
Phone: (877) 206-4741
Fax: (866) 633-0228
Email: tfriedman@toddflaw.com

*ATTORNEYS FOR PLAINTIFFS*

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  DR. ROBERTS' DAMAGES MODEL MATCH'S PLAINTIFF'S   CLAIMS 2

III. THE DISTRICT COURT ENGAGED IN A RIGOROUS ANALYSIS ............6

IV.   *NUTRAMAX* CONTROLS ON QUESTIONS OF MATERIALITY AND CAUSATION.................................................................................................11

V.   CONCLUSION........................................................................................14

CERTIFICATE OF COMPLIANCE FOR BRIEFS ...............................................17

CERTIFICATE OF SERVICE ...............................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390, 409 n.14 (N.D. Cal. 2021) ........................................................5

*Guido v. L'Oreal, USA*,
   No. 2:11-CV-01067-CAS, 2014 WL 6603730 at *8 (C.D. Cal. July 24, 2014) ....5

*In re ConAgra Foods, Inc.*,
   90 F.Supp.3d 919,1025-1032 (C.D. Cal. 2015)...................................................5

*Lytle v. Nutramax Laboratories, Inc.,*
   99 F.4th 557 (9$^{th}$Cir. 2024) ................................................................ 1, 8, 11, 13

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) (en banc) ................................................................9

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .................................................................... 12, 14

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442, 453 (2016).....................................................................................5

**Statutes**

FRCP 23(c)(1)(A) ......................................................................................................9

## I. INTRODUCTION

Legally, *Lytle v. Nutramax Laboratories, Inc.,* 99 F.4th 557 (9th Cir. 2024) ("*Nutramax*") and this case are nearly identical. Respondents make the same arguments on appeal as were rejected in *Nutramax*. Instead of acknowledging that *Nutramax* forecloses its position, JJCI pivots by making false distinctions between the cases based entirely on red herrings and irrelevant facts. JJCI argues, without support, that Dr. Roberts' report does not match Plaintiff's claims. This is despite this Court acknowledging at oral argument that this is inaccurate. JJCI also attempts to distinguish this case on materiality despite the cases being in an identical legal position, and there being even stronger evidence than in *Nutramax*. Finally, JJCI argues that the District Court's analysis was not sufficiently rigorous, something unsupported by the record.

Factually, *Nutramax* and *Noohi* are nearly equal. In fact, *Noohi* is an even stronger case than *Nutramax* in terms of affirming the District Court's ruling because (1) the procedural posture below leaves expert discovery open, unlike *Nutramax* in which discovery was closed, (2) the misrepresentation in *Noohi* is the name of the product ("Oil Free Moisture"), and the record of materiality is more compelling and unchallenged, and (3) as JJCI's counsel implied on oral argument, Dr. Roberts' report was more developed and robust than the report in *Nutramax*.

*Nutramax* requires the District Court's opinion be affirmed. As a reminder, the four issues raised by JJCI on appeal should be revisited at Pages 13-14 of its Opening Brief at Dkt. No. 19. Issues One, Three and Four are legally foreclosed by *Nutramax*. Issue Two is belied by the record and would require a finding by this Court on the record of the case that Judge Hatter abused his discretion when disagreeing with JJCI. But Dr. Roberts' damages model is not unlike any other conjoint survey, which are routinely upheld as a valid damages methodology for mislabeling class actions. While Defendant has challenged some minor issues it believes will lead to bias, this is an issue of magnitude, not a categorical problem, and one which *Nutramax* instructs in any case is unripe.

## II. DR. ROBERTS' DAMAGES MODEL MATCH'S PLAINTIFF'S CLAIMS

JJCI's legal position that Dr. Roberts' damages model does not align with Noohi's request for damages is nonsensical and inaccurate. Considering that JJCI agreed with this Court in oral argument that this case was not only substantially similar to *Nutramax*, and strongly implied Dr. Roberts did *more* than the expert in *Nutramax*, JJCI's position strains credulity.

As was already addressed pointedly by Judge Berzon during oral argument, Dr. Roberts' economics model is not inconsistent with Plaintiff's Complaint, which seeks damages based on a difference between the value of the product which

consumers received, and the value of the product consumers were represented to be receiving, i.e. a price premium. One component of the actual damages claim is based on mistrust and loss of confidence in the product's labeling. JJCI mischaracterizes this as "emotional outrage." In fact, Dr. Roberts' survey is designed to quantify the amount of a partial refund of the purchase price attributable to JJCI's misrepresentation. JJCI's histrionics and hyperbole are simply not an accurate framing of the analysis which Dr. Roberts describes in his report. Rather, the issue is whether his survey will lead to bias or overstatement of the damage - a question reserved for another day.[1]

JJCI's deliberate attempt to misconstrue Dr. Roberts' report is concerning. Though Dr. Roberts will measure consumers' reaction to learning the product is not actually oil-free, this is only a small part of a layered and detailed survey preceding his econometrics analysis. It is not the sole damages theory Dr. Roberts purports to measure. In fact, Dr. Roberts expounds upon this in his report, referring to it as a pre and post exposure analysis (the "exposure" being the understanding that the product isn't actually oil free) to determine willingness to pay, using Van Westendorp price elasticity tests. 3-ER-276. This is a well settled economic

---

[1] As an aside, the survey is now nearly complete, and the results do not appear to be biased in any way. JJCI can raise its issues before Judge Hatter with the benefit of a developed record. For now, this Court should affirm and allow that process to play out rather than substituting its own discretion for that of the District Court.

principle meant to measures the prices at which consumers find the product to be too inexpensive to be considered, a good value, expensive but still worth considering, and finally, too expensive to be considered. Results produced when applying this model provide prices that consumers are most likely to regard as the price identified to be a "good value" under a series of conditions, including oil-free claim perceived to be true and oil-free claim perceived to be false. *Id.* These results, across different statistically significant population surveys, will allow the trier of fact to consider a spectrum of possible damages outcomes. Some of those will factor in the damage done to consumers by their loss of faith in the product as a result of what JJCI mischaracterizes as the big reveal. Others will not.

JJCI admits in its brief "the correct way to measure damages in UCL, FAL, and CLRA cases is to take the 'difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." JJCI Supplemental Brief at p.3. This is precisely what Dr. Roberts intends to measure. Moreover, this is the same methodology courts have applied in other mislabeling class actions. Plaintiff emphasizes the following cases, as Judge Berzon requested at oral argument:

- *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018).
- *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 1025-1032 (C.D. Cal. 2015).
- *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 409 n.14 (N.D. Cal. 2021)

- *Guido v. L'Oreal, USA*, No. 2:11-CV-01067-CAS, 2014 WL 6603730 at *6-8 (C.D. Cal. July 24, 2014).
- *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

The prevailing view is that surveys, including conjoint surveys, are appropriate vehicles by which to estimate damages in mislabeling class actions. What JJCI is really asking this Court to do is to hold it was an abuse of discretion for Judge Hatter to consider that weight of precedent and without any true factual basis offered by JJCI to find otherwise, hold that Noohi's proposed methodology could yield pertinent evidence to the trier of fact bearing on damages under a reasonable consumer standard. That is an uphill battle, given the *Nutramax* standards.

JJCI takes issue with the introduction of bias, which (if it occurs) is a critique that can be challenged after the survey is complete, and which (given Dr. Roberts' breadth of expertise) is unlikely. Moreover, if such bias is ultimately shown by JJCI's experts at trial, the trier of fact could simply award a lower figure to the Class than Dr. Roberts proposes. If it were sufficient for a defense expert to simply shout "there *may* be bias!" from the rafters, then no class could ever be certified. This is not the standard.

JJCI assumes without any evidentiary basis that Dr. Roberts' method is going to measure "consumers' emotional response," but that is not stated anywhere in Dr. Roberts' report as something he is measuring. This is another example of

hyperbole – a deliberate misinterpretation by JJCI while knowing the Law of the Circuit weighs against the issues on appeal.

Finally, even assuming *arguendo*, that JJCI's misconception of Dr. Roberts' econometrics analysis were accurate (which it is not), it would still not be improper for the expert to measure damages by, in part, measuring emotional impact in a CLRA and UCL case for which loss of consumer confidence in the market and a consumer's outrage at being defrauded are cognizable elements of their injury, especially where the lie is literally the name of the product and number one claim made by the company selling it. This is, after all, a damage caused by JJCI's lies, so long as it is accurately measured. JJCI cites absolutely no authority to support its offhanded remark that Plaintiff's allegations of emotional harm (which are actually allegations of stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling) are irrelevant; because it cannot. These "emotional" markers are hardly the crux of the damages analysis. But they may be relevant to the damage suffered by the Class. The survey will attempt to measure this, among many other things.

## III. THE DISTRICT COURT ENGAGED IN A RIGOROUS ANALYSIS

JJCI here makes the same argument *Nutramax* made on appeal, arguing the expert's model was too "underdeveloped" to constitute a rigorous analysis. Regarding the difference between *Noohi* and *Nutramax*, JJCI's counsel told this

Court at oral argument that in *Nutramax* the expert said "I'm going to run a conjoint survey. That's it." Dr. Roberts did far more than that in terms of designing and proposing a model capable of measuring damages on a classwide basis. *Nutramax* thus forecloses this line of argument for JJCI.

*Nutramax* reiterates what Noohi argued in her Brief, and at oral argument: "plaintiffs must show that they will be able to prove their case through common proof at trial. Given, moreover, that the Federal Rules contemplate that certification will be made "[a]t an early practicable time," FRCP 23(c)(1)(A), we see no reason why plaintiffs may not, in appropriate circumstances, satisfy this burden through a proffer of a reliable method of obtaining evidence that will come into existence once a damages model is executed, even when the results are not yet available at the class certification stage. We thus hold that class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Nutramax*, *supra* at 570. *Nutramax* further held that, "there is no dispute that a conjoint analysis is capable of measuring classwide damages, at least in the abstract, and the only real question at this stage is whether Dr. Dubé will properly apply the method to the facts of the case." *Id.* at 579.

The same is true here, where both JJCI's rebuttal expert and Dr. Roberts agree that Dr. Roberts' proposed methodology is the best way to measure damages. Just as in *Nutramax*, JJCI's objections relate to ways in which he could commit error when executing it. The District Court expressly noted this in its ruling, stating "Those critiques do not establish that Noohi's proposed methodology is inadequate, but, rather, take issue with how her model might be executed and the conclusions that it might deliver." 1-ER-11. As *Nutramax* clarified, "The speculative possibility that Dr. Dubé might slip up in executing his model, standing alone, is insufficient to defeat class certification." *Nutramax, supra,* at 579.

What JJCI fails to mention when arguing that the District Court did not engage in a "rigorous" analysis with respect to JJCI's evidentiary objections, is how the District Court scrutinized Noohi's other expert - Dr. Hickner. In ruling on JJCI's objections, the District Court conducted a full *Daubert* analysis on Dr. Hickner (despite JJCI not filing a *Daubert* motion), and found Dr. Hickner's report inadmissible because it did not "point to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that [he has] followed the scientific method." 1-ER-8. Because the District Court found that he had not done so, it found his testimony was "not admissible at this procedural juncture." *Id.* However, the District Court then proceeded to the second prong of the analysis to determine

whether the inadmissibility had any bearing on Dr. Hickner's ability to introduce conclusions that could prove or disprove deception on a class wide basis in an admissible format at trial or summary judgment, under *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc). *Id.* The Court found that JJCI presented no evidence that bore on Dr. Hickner's inability to do so, rather focusing their own expert evidence on their theory of the case. In doing so, the Court established that "Noohi has demonstrated that she will be able to resolve the common question of deception on a class-wide basis, in one stroke." 1-ER-9.

A full reading of District Court Order reveals that a rigorous analysis was conducted, and the District Court thoroughly weighed the very objections and concerns JJCI argues were categorically not considered. JJCI leaves Dr. Hickner out of its appellate attack, but this is relevant to show a rigorous analysis of all expert testimony was conducted using the proper legal standards set forth in *Daubert* and *Olean.* To argue that the District Court did not conduct a "rigorous analysis" flies in the face of this robust analysis of Ms. Noohi's experts.

Further, JJCI's repeated argument that Dr. Roberts' model was "severely underdeveloped" reveals a fundamental misunderstanding of Dr. Roberts' model. The model wasn't underdeveloped, it just had not yet been carried out. To ask Dr. Roberts to create the survey questions in advance of the qualitative phase

undermines his design. This is why the District Court held JJCI's criticism of Dr. Roberts' model was "not yet ripe." Arguably, in *Nutramax*, it was possible for the expert to draft the questions prior to running the conjoint survey, but this Court still did not require that to be done. *Noohi* is an easier case. It was not error to grant certification before *Nutramax*, nor is it error now.

*Nutramax* holds: "The fact that a model is underdeveloped may weigh against a finding that it will provide a reliable form of proof. Merely gesturing at a model or describing a general method will not suffice to meet this standard. Rather, plaintiffs—or their expert—must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Nutramax, supra,* at 578. Dr. Roberts charted this path in his report, and the District Court evaluated JJCI's objections, and briefing, over a six-month period. Indeed, as Ms. Noohi pointed out in her opposition brief, the methods Dr. Roberts proposed were agreed upon by both experts as the best way to measure damages. JJCI cannot credibly argue that its dispute is towards the methodology Dr. Roberts proposes, or his credentials. Rather, JJCI takes issue with the fact that it cannot challenge the validity of the survey questions or the survey results at this juncture. This is a fictional burden foreclosed by *Nutramax*. And so, JJCI now presents a contrived shadow of its former arguments, which, when viewed against

the record of this case, is best described as a combination of misrepresentation and hyperbole.

## IV. *NUTRAMAX* CONTROLS ON QUESTIONS OF MATERIALITY AND CAUSATION

JJCI makes no compelling distinction between *Noohi* and *Nutramax* on materiality. Nor can it, because JJCI's arguments were exactly the same as those in *Nutramax* regarding materiality and causation.[2] JJCI continues to argue that the "materiality" of the "oil-free" phrase would vary from consumer to consumer. *Nutramax* resolves this question (again, as it was already Law of this Circuit), and the facts in *Nutramax* are on all fours with *Noohi*, where a common label misrepresentation is at issue. Nutramax opposed class certification on the same grounds that individual questions predominated with respect to the element of reliance arguing that (1) substantial variation in the labels precluded a finding of predominance, (2) Plaintiffs had failed to show common exposure to the challenged statements, and (3) Plaintiffs had not shown the challenged statements factored into the typical consumer's purchasing decision or would have been material to such consumers. *Id.* at 567. Here, in their opening brief, and now

---

[2] It is worth mention that the Rule 23(f) petition filed by JJCI focused heavily on *Nutramax* as the basis for the application, which otherwise presumably would not have been granted. JJCI analogized heavily to *Nutramax* to get its foot in the appellate door and now is distancing itself from the Order, apparently unhappy with the result.

continuing in their supplemental brief, JJCI reiterates this same stale argument. This Court has held the same standards time and time again since *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011). Enough is enough.

Here the challenged false claim is "Oil Free" in a product that has the misrepresentation in its very name. It is facially obvious that this is objectively material. The misrepresentation cannot be distinguished from the product itself, as Judge Berzon pointed out at oral argument. As a result of this fact, as well as other evidence of materiality cited in the briefing, this is an easier case than *Nutramax*. An abundance of evidence, including expert testimony, was submitted by Nutramax to rebut the plaintiff's evidence of materiality, which the District Court then had to weigh. But here, the evidence showed JJCI never conducted surveys to determine whether the statement "oil-free" was important or material to consumers. 4-SER-817. There is not, and indeed could not be, any rebuttable evidence of materiality here where JJCI has never disclosed to anybody that the product is not truly oil free, or measured materiality of that statement in its own marketing research.[3] In contrast, in *Nutramax*, expert surveys were conducted and presented by Nutramax to rebut the

---

[3] Moreover, the evidence in the record proffered by Noohi shows that the product's oily and greasy feeling was the number one consumer complaint, and the oil-free claim was considered important by the marketing department because they designed the packaging to ensure the claim was "top of mind" for consumer. Customer complaints show materiality, and JJCI's own marketing department admits to an intention for the claim to be material.

SUPPLEMENTAL BRIEF

plaintiff's evidence of materiality, which showed consumers were buying the product before going to the website or store where the challenged misrepresentations appeared. Even in light of that evidence, this Court held in *Nutramax* that for purposes of certification, it was not an abuse of discretion for the district court to have concluded that plaintiffs had met their burden. *Id.* at 582.

Just as the district court held in *Nutramax*, the District Court in *Noohi* acknowledged the correct legal standard with respect to materiality, evaluated the evidence supporting materiality, and made its ruling. Indeed, there was no evidence in the record that showed that materiality differed across the class, or which rebutted the objective reasonable consumer standard offered by Plaintiff. The District Court reviewed the evidence and ruled that "Noohi intends to demonstrate that putative class members were uniformly exposed to the oil-free packaging language by pointing to the Product's packaging, which prominently displayed the language as part of the Product's name and was unavoidable. Johnson & Johnson did not dispute that the packaging language was visible to consumers who purchased the Product. Accordingly, the Court can infer class-wide exposure to the packaging language." 1-ER-10. This case is directly on point with *Stearns*, which held "[c]ausation is inferred where an entire class was exposed to a materially misleading misrepresentation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011). There can be no more straightforward of a misleading misrepresentation than one

where the very name of the product is the lie. Evidence in the record also showed consumers complained that the product feels oily and greasy. 2-SER-221-277. Noohi submitted expert opinion evidence on the definition of the term "oil" as well as the testimony of the plaintiff, Ms. Noohi. JJCI did not rebut this evidence in the District Court, and without support, argued on appeal that the District Court "refused to consider JJCI's evidence." Based on what? *See* JJCI's Opening Brief at p. 51.

Further buttressing Plaintiff's materiality claims at trial will be Dr. Roberts' survey, which will attempt to isolate how much consumers would have paid for the same product if it did not have the oil free label, using a Van Westendorp price elasticity model. As stated in Noohi's Opposition to JJCI's Opening Brief, it was not an abuse of discretion for the District Court to apply this Court's and the California Supreme Court's inference of reliance to the Class on the record before it. Like this Court held in *Nutramax*, "[JJCI's] cramped interpretation of the reliance requirement, permitting the presumption to be overcome based upon marginally different interactions with a product containing a label that is otherwise materially misleading, would undermine the presumption of reliance and the capacity to bring CLRA class actions." *Nutramax, supra*, at 583.

## V. CONCLUSION

*Nutramax* weighs heavily in favor of affirming the District Court's ruling, for the reasons set forth herein, in her Opposition Brief, and at oral argument. The

District Court's Order should be summarily affirmed.

Dated: June 5, 2024         Respectfully submitted,

By: */s/ Todd M. Friedman*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)

**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

*Attorneys for Appellant Narguess Noohi*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, according to the word-processing software used to generate the brief, it contains 3,487 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief additionally complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: June 5, 2024

BY: /s/ Todd M. Friedman
Todd M. Friedman, Esq.

# CERTIFICATE OF SERVICE

I, Todd M. Friedman, certify that on June 5th, 2024, APPELLEE'S SUPPLEMENTAL BRIEF was e-filed through the CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's EMC/ECF system. A copy of the e-filed documents were sent, via the EMC/ECF system:

HANNAH Y. CHANOINE
O'MELVENY & MYERS LLP
7 TIMES SQUARE
NEW YORK, NY 10036
(212) 326-2000

MATTHEW D. POWERS
VICTORIA C. HARGIS
O'MELVENY & MYERS LLP
TWO EMBARCADERO CTR. 28TH FL. SAN FRANCISCO, CA 94111
(415) 984-8700

Dated: June 5, 2024

                                  BY: /s/ Todd M. Friedman
                                      Todd M. Friedman, Esq.